UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 22-CR-41-S-CHB-HAI

UNITED STATES OF AMERICA                                                                    PLAINTIFF

V.                      **UNITED STATES' TRIAL MEMORANDUM**

MICHAEL L. HOWELL and
DERREK A. LOVETT                                                                              DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*

The United States, by and through the undersigned counsel, submits the following trial memorandum in accordance with the Court's pretrial and trial management order. DE 133.

**I. Statutes Involved**

The superseding indictment charges the defendants with violating three separate criminal statutes.

Count One charges Defendant Lovett with violating 18 U.S.C. § 242, deprivation of rights under color of law. The elements of 18 U.S.C. § 242 are:

**First**: that the defendant acted under color of law;

**Second:** that the defendant deprived someone in the United States of a right secured or protected by the Constitution or laws of the United States. In this case, the right involved is the Fourth Amendment right of every person in the United States to be free from an unreasonable seizure, which includes the right to be free from the unreasonable use of force by a law enforcement officer in the course of an arrest.

**Third:** that the defendant acted willfully, and;

**Fourth:** that the offense resulted in bodily injury.

Count One also charges Defendant Lovett with the same crime under the alternative theory that he aided and abetted Jeremy Elliotte in violating 18 U.S.C. § 242.

Count Three charges Defendants Lovett and Howell with conspiracy under 18 U.S.C. § 371 (specifically a conspiracy to violate 18 U.S.C. § 1512(b)(3)). The elements of 18 U.S.C. § 371 are:

**First:** that two or more people conspired, or agreed, to commit a crime (in this case, the crime of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3));

**Second:** that the defendant knowingly and voluntarily joined the conspiracy, intending to achieve its objective; and,

**Third:** that a member of the conspiracy did at least one of the overt acts described in the indictment, for the purpose of advancing or helping the conspiracy.

Counts Five and Six charge Defendants Howell and Lovett, respectively, with 18 U.S.C. § 1512(b)(3), a statute technically titled "tampering with a witness, victim, or an informant" but probably more easily understood as obstruction of justice. The elements of 18 U.S.C. § 1512(b)(3) are:

**First:** That the defendant knowingly engaged in misleading conduct towards the person indicated in the count (in this case, Howell and Lovett's KSP supervisor)

**Second:** That the defendant acted with the intent to hinder, delay, or prevent the communication of information to a federal law enforcement officer;

2

**Third:** That there was a reasonable likelihood that, absent the obstruction or attempted obstruction, the communication would have been made to a federal law enforcement officer; and,

**Fourth:** That the information concerned the commission or possible commission of a federal offense.

The United States does not anticipate any dispute over the statutes involved and elements of the offenses.

## II.  Proposed Statement of the Case

The United States proposes the following statement to be read to the jury, which hews closely to the language of the indictment:

Defendants Derrek A. Lovett and Michael L. Howell are charged related to actions taken during and after a use of force against someone they were arresting on August 18, 2024.  Defendant Lovett, while acting under color of law as a Kentucky State Police Trooper, is charged with willfully deprived an individual named Bradley Hamblin of the right, protected and secured by the Constitution, to be free from the use of unreasonable force by an officer.  Specifically, Defendant Lovett is alleged to have assaulted Mr. Hamblin without legitimate law enforcement justification and is alleged to have aided and abetted another state trooper, Jeremy Elliotte, in assaulting Bradley Hamblin.

Both defendants were later interviewed by a Kentucky State Police supervisor about what happened to Mr. Hamblin that night.  The defendants are charged with conspiring, along with another trooper, Jeremy Elliotte, to engage in misleading conduct towards that supervisor with the intent to hinder, delay, or prevent communication of information to a federal law enforcement officer relating to the commission or possible commission of a federal offense.  Specifically, the

3

defendants are charged with conspiring to conceal the true nature of the force used on Bradley Hamblin and the circumstances under which force was used on Mr. Hamblin by agreeing upon a false narrative and agreeing to stick to that cover story when being interviewed by supervisors. They are alleged to have done so through a variety of overt acts, including: that Howell asked Elliotte what false narrative they were "sticking with" regarding the use of force; that Elliotte instructed Howell, after speaking with Lovett, that the false narrative would have to be "the closest thing possible [to what] the video the would show"; that Elliotte falsely told his supervisor that Mr. Hamblin had tried to flee three times prior to the use of force described earlier, that Mr. Hamblin had aggressively resisted arrest, and that Mr. Hamblin simultaneously flailed his arms and buried his arms underneath him; that Howell failed to disclose to his supervisor that Mr. Hamblin had been repeatedly punched in the face and that the use of force was, in his own words, "pretty bad" such that he hoped the use of force had not been recorded, and; that Lovett gave an interview in which he falsely claimed to his supervisor that Hamblin had attempted to flee prior to his use of force on Hamblin and that Hamblin both flailed his arm and kept his hands underneath his body prior to using force on him.

     Finally, each defendant is separately charged with obstruction of justice by knowingly engaging in misleading conduct towards another person in order to hinder, delay, and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense.  Each defendant is charged with doing this through engaging in misleading conduct towards the KSP supervisor in the interviews I discussed a moment ago.

     The defendants have pleaded not guilty to the charges in the indictment.

4

### III. Statement of Disputed Facts

The United States anticipates that most of the trial will turn on a dispute over a few material facts:

1) Whether or not Lovett used force on Hamblin for a legitimate law enforcement purpose or out of anger and revenge due to Hamblin's attempt to burn down his future residence;

2) Whether or not Hamblin did indeed attempt to flee on three separate occasions prior to Lovett and Elliotte using force on him;

3) Whether or not Hamblin represented a threat to Elliotte's or Lovett's safety prior to Lovett and Elliotte using force on him; and

4) Whether or not Lovett, Howell, and Elliotte provided a truthful account to their supervisor, Sergeant Jason Partin, during their interviews, or instead provided a story they were "sticking with" that would be "the closest thing possible the video would show."

### IV. Statement of Unresolved Substantive Issues of Law

At this point, the United States is unaware of any unresolved substantive issues of law. There may be some legal disagreements regarding motions *in limine*, jury instructions, or objections at trial, but generally speaking the United States anticipates that there will be agreement on the applicable law and that the case will instead center on a factual dispute about what happened on August 18, 2020, and in the aftermath.

### V. Evidentiary Issues Reasonably Believed to be Raised at Trial

There are a few evidentiary issues anticipated by the United States that will be addressed through separate motions *in limine* filed simultaneously with this memorandum. There are also a few minor evidentiary issues that may come up but are unlikely to require substantive litigation.

5

First, the United States intends to introduce one or more summary exhibits, including a summary explaining the cell phone toll records received by the FBI from the defendants' phones because the raw data is in a spreadsheet that is difficult to comprehend. The summaries will be shown to defense counsel in advance and any issues will be raised to the Court either prior to trial or during a break outside the presence of the jury.

Second, the United States also intends to add a transcript to some portions of the inadvertent dashboard camera recording from Defendant Howell (currently marked as government exhibits 11G through 11I) for the ease of the jury. Once again, the proposed transcript will be provided to the defense prior to it being shown to the jury, and hopefully both sides will be able to reach an agreement on the accuracy of the transcript. If there are any issues that cannot be resolved between counsel, those issues will once again be raised either prior to trial or outside the presence of the jury.

Third, while the United States is filing a separate motion *in limine* seeking to limit reference to Mr. Hamblin's criminal history, the United States anticipates that other witnesses with criminal convictions may testify. While there are no convictions that seem likely to create a dispute, any use of the convictions for impeachment must of course satisfy the requirements of Fed. R. Evid. 609, and other than the existence of the convictions, there should be no further inquiry into either the nature or circumstances of those convictions. If either counsel intends to go into either a misdemeanor conviction or conviction older than ten years' or intends to inquire about the nature and circumstances of the underlying conviction, the United States requests that they notify the parties and the Court in advance so the matter may be litigated outside the presence of the jury.

Finally, the United States intends to introduce portions of each defendant's interview with their KSP supervisor, along with co-conspirator Elliotte's interview (currently listed as

government exhibits 8 through 10 on the exhibit list filed simultaneously with this trial memorandum). These are not hearsay when offered by the United States, as they are an opposing party's statement offered against them under Fed. R. Evid. 801(d)(2). (Elliotte's statement is not hearsay under Fed. R. Evid. 801(d)(2)(E) as it is a statement of the opposing party's coconspirator during and in furtherance of the conspiracy.) However, were the defendants to attempt to offer any portion of the statement, they would be inadmissible hearsay under Fed. R. Evid. 801, as they would no longer be offered by an opposing party and instead be classic hearsay. While the United States is only offering the most relevant portions of the defendants' and Elliotte's statements, the defendants could not argue under Fed. R. Evid. 106 (based on the common-law doctrine of the "rule of completeness) that they are permitted to enter the entire statements into the record, as "[c]ompleteness does not outweigh the hearsay rules" nor does it "make inadmissible evidence admissible." *United States v. Shaver*, 89 F. App'x 529, 533 (6th Cir. 2004).

**VI. Reasonably Anticipated Trial Issues or Other Issues That May Assist the Court**

One recent trial issue is co-defendant Elliotte's plea and how that affects what the jury is told and shown. The United States, and presumably the defendants, do not think it appropriate that the jury learn anything about co-defendant Elliotte's guilty plea or sentence in this case assuming he does not testify. Any knowledge of Elliotte's admission of guilt to a civil rights offense could unfairly prejudice the jury against the remaining defendants. If he is not called as a witness, the United States proposes referring to and providing a sanitized version of the indictment to the jury to avoid any suggestion or speculation as to Elliotte's plea. This proposed version would eliminate any reference to Elliotte being a defendant but still include his name where relevant to the evidence against Howell and Lovett. In Count One, that would mean eliminating reference to him and listing him as a defendant, but including his name as Lovett is also charged

under an aiding and abetting theory. Count Two would be eliminated entirely, either through redaction or, preferably, by deleting and renumbering the remaining counts to avoid juror speculation. Count Three would be altered by eliminating a reference to Elliotte as a defendant, but would include references to Elliotte as a co-conspirator. Count Four would be eliminated entirely, again through either redaction or deletion and renumbering the subsequent counts. Counts Five and Six can remain as written.

The United States intends to introduce portions of co-conspirator Elliotte's statement to his supervisor regarding the use of force (currently listed as government exhibit 9), along with portions of the remaining defendants' statements to that same supervisor, currently listed as government's exhibits 8 and 10, under Fed. R. Evid. 801(d)(2). During the June 25, 2024, the Court wisely made an inquiry of the United States and defense counsel as to whether there were any remaining issues from Elliotte's suppressed statements that could affect this trial. Counsel for the United States indicated there were not and defense counsel agreed.

Only Elliotte ever claimed that his statement was given in violation of *Garrity v. New Jersey* and that the United States' use of his statement would violate his Fifth Amendment right against self-incrimination, and defendants Lovett and Howell have never sought to have their statements suppressed.

While Elliotte's suppressed statements could not have been used by the United States against him had he proceeded to trial, they were not suppressed with regard to his co-defendants. *See* DE 98 (noting the suppressed statements "cannot be used against Elliotte" with respect to Counts 1 and 2). Since Elliotte's statements were also alleged to have been given in furtherance of a conspiracy and for obstructive purposes, as noted in the Court's suppression order, they would have been admissible to prove the conspiracy and obstruction regardless of if Elliotte remained a

defendant or not. DE 98 at pp. 97-98 (noting his statements could still be used for the remaining counts and citing *McKinley v. City of Mansfield*, 404 F.3d 418, 427 (6th Cir. 2005)).

As the Court is aware, the analysis of whether a statement was implicitly compelled under *Garrity* is a highly individualized and fact-specific finding that is reliant on a defendant meeting the burden of proving compelled self-incrimination. Although the remaining defendants also gave statements to their supervisor with some similarities in circumstance to Elliotte's, counsel for the defendants have made the strategic choice not to join Elliotte's suppression motion or file their own. As a result, both Elliotte's statements and the defendants' statements to the supervisor can be used as substantive evidence, both to prove the deprivation of rights charge in Count 1 as well as the conspiracy and obstruction charges in Counts 3, 5, and 6.

### VII. Conclusion

In accordance with the pre-trial order, the United States will be filing proposed voir dire questions, proposed substantive and special jury instructions, and an exhibit list separately but simultaneously with this filing. The United States will also provide a proposed witness list *in camera* to the Court via e-mail.

    Respectfully submitted,

    CARLTON S. SHIER IV
    UNITED STATES ATTORNEY

By: *s/Zachary S. Dembo*
    Zach Dembo
    Assistant United States Attorney
    260 W. Vine Street, Suite 300
    Lexington, Kentucky 40507-1612
    (859) 685-4908
    Zachary.dembo@usdoj.gov

By: *s/Emily K. Greenfield*
    Emily K. Greenfield
    Assistant United States Attorney

                                              260 W. Vine Street, Suite 300
                                              Lexington, Kentucky 40507-1612
                                              Emily.Greenfield@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On July 29, 2024, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record.

                                              <u>*s/Zachary S. Dembo*</u>
                                              Assistant United States Attorney